FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Feb 26, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MORGAN F.,[1]

                    Plaintiff,

          v.

LELAND DUDEK, Acting
Commissioner of Social Security,[2]

                    Defendant.

No.     4:24-CV-05104-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

          Due to generalized anxiety disorder, major depressive disorder, bipolar

disorder, cannabis dependance, left shoulder impairment, hyperthyroidism, and

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek was named the Acting Commissioner of Social Security on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted as the defendant.

DISPOSITIVE ORDER - 1

irritable bowel syndrome, Plaintiff Morgan F. claims she is unable to work fulltime and applied for disability insurance benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly evaluated the medical opinions, improperly assessed Plaintiff's credibility, and has not adequately explained why he failed to include several provisions in the RFC to account for a medical opinion which he found to be persuasive. As is explained below, the ALJ erred in failing to adequately articulate his reasoning for not including a provision that Plaintiff required special supervision. This matter is remanded for further proceedings.

## I.    Background

In April 2021, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability beginning January 1, 2018, based on the physical and mental impairments noted above.[3]

The agency denied benefits at the initial and reconsideration levels.[4] After the agency denied Plaintiff benefits, ALJ Malcolm Ross held a telephone hearing in August 2023, at which Plaintiff appeared with her representative.[5] Plaintiff and a vocational expert testified.[6]

---

[3] AR 268, 272, 304.

[4] AR 140, 151, 157.

[5] AR 37-68.

[6] *Id.*

1      After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ

2   found Plaintiff's alleged symptoms were not entirely consistent with the medical

3   evidence and the other evidence.[8] As to medical opinions, the ALJ found:

4       • The opinions of state agency evaluators Robert Stuart, MD, and

5         Dorothy Leong, MD, that Plaintiff has no medically determinable

6         physical impairments to be unpersuasive.

7       • The opinions of state agency evaluators Jon Anderson, PhD, and Sheri

8         Tomak, PsyD, that Plaintiff retains the capacity to carry out simple

9         instructions, maintain concentration, persistence, and pace for up to

10        2-hours continuously, maintain adequate attendance, complete a

11        normal workday/workweek within normal tolerances of a competitive

12        workplace, can interact with others on an occasional/superficial basis,

13        can accept instructions from a supervisor, can understand and follow

14        employer set goals, and can adapt to normal, routine changes in a

15        competitive workplace within normal tolerances to be persuasive.[9]

16

17

_____

18  [7] AR 14-35.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines

19  whether a claimant is disabled.

20  [8] AR 22-25.

21  [9] The ALJ did not address the fact that Dr. Tomak opined that there was

22  insufficient evidence to assess Plaintiff's limitations as to the Title 2 claim.

23

DISPOSITIVE ORDER - 3

- The opinions of independent medical examiner David Morgan, PhD, to be unpersuasive as to the assessed marked limitations.
- The opinions of independent medical examiner David Morgan PhD, to be persuasive as to the assessed mild to moderate limitations.
- The opinions of reviewing source Holly Petaja, PhD, to be unpersuasive.[10]

The ALJ also found the third-party statement of Plaintiff's mother to be not entirely consistent with the objective medical evidence.[11]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through June 30, 2019.
- Step one: Plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged onset date.
- Step two: Plaintiff had the following medically determinable severe impairments: generalized anxiety disorder, major depressive disorder, bipolar disorder, cannabis dependance, and left shoulder impairment.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered listings 1.18, 12.04, and 12.06.

---

[10] AR 25-27.

[11] AR 27.

- RFC:  Plaintiff had the RFC to perform a full range of medium work with the following exceptions:

  frequent forward and lateral reaching with the left non-dominant arm; occasional overhead reaching with the left nondominant arm; occasional exposure to temperature extremes; able to understand, remember and carry out simple work; with standard work breaks provided; occasional, superficial interaction with the public, coworkers and supervisors; able to accept simple instructions from supervisors; able to use judgement to make simple work decisions; occasional, normal, and routine workplace changes.

- Step four: Plaintiff is unable to perform past relevant work of a produce clerk.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a machine packager (DOT # 920.685-078), a cleaner, laboratory equipment (DOT # 381.687-022), and a floor waxer (DOT # 381.687-034).[12]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[13]

_____

[12] AR 19-28.

[13] AR 1-6.

1

2

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial

evidence or is based on legal error,"[14] and such error impacted the nondisability

determination.[15] Substantial evidence is "more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[16]

7

8

9

---

10

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §§ 405(g),

1383(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

*grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a) (recognizing that the court may

not reverse an ALJ decision due to a harmless error—one that "is inconsequential

to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion," not

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

not indicate that such evidence was not considered[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.    Analysis

Plaintiff seeks relief from the denial of disability on the grounds that the ALJ erred in evaluating the medical opinions and erred in his consideration of Plaintiff's subjective allegations.[17] Although Plaintiff does not characterize her argument as such, the Court concludes that Plaintiff's argument regarding the ALJ's consideration of the medical opinions is actually separated into two arguments – that the ALJ erred in evaluating the persuasiveness of Dr. Morgan's assessed marked limitations, and that the ALJ erred in formulating the RFC because he did not account for Dr. Morgan's opined mild to moderate limitations, which the VE testified were work preclusive.[18]  The Commissioner argues that the ALJ reasonably interpreted Dr. Morgan's opined mild to moderate limitations to formulate the RFC and that the VE did not testify that they were work preclusive.[19] The Court disagrees with the Commissioner. As is explained below, the ALJ's analysis contains consequential error.

### A.    Formulated RFC: Plaintiff establishes consequential error.

Plaintiff argues that the ALJ erred by finding that Dr. Morgan's opined mild to moderate limitations were persuasive but then failing to make any provision for them in his formulated RFC.

---

[17] ECF No. 8.

[18] *Id.*

[19] ECF No. 12.

1

2          1.      Standard

An RFC "is the most [one] can still do despite [her] limitations" and it is

3   "based on all the relevant evidence in [one's] case record," rather than a single

4   medical opinion or piece of evidence.[20] "[T]he ALJ is responsible for translating and

5   incorporating clinical findings into a succinct RFC."[21]  When incorporating a

6   credited medical opinion, the ALJ's findings need only be consistent with the

7   opined limitations, not identical to them.[22] Therefore, the RFC need not mirror a

8   particular opinion; it is an assessment formulated by the ALJ based on all relevant

9   evidence. However, it is error for an ALJ to simultaneously claim to incorporate a

10  medical opinion and yet, without explanation, omit relevant limitations set forth in

11  that medical opinion.[23]

12          In making the RFC determination, the ALJ considers those limitations for

13  which there is record support that does not depend on properly rejected evidence

14  and subjective complaints."[24] A reviewing court "will affirm the ALJ's

15

16

_____

17

18  [20] 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based

on all of the relevant medical in your case record.")

19

20  [21] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[22] *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1271, 1223 (9th Cir. 2010).

21

22  [23] *See* SSR 96-8p, 1996 WL 374184 at *7 (Jul. 2, 1996).

[24] *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

23

determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence."[25]

    1. <u>Relevant Testimony</u>

        a. <u>*Plaintiff's Testimony*</u>

In August 2023, Plaintiff appeared with her attorney to testify before ALJ Ross.[26] Plaintiff testified that she completed high school.[27] Plaintiff stated that she was right-handed, that she was 5'2" tall and weighed 135 pounds, and had lost about 25 pounds since 2021 due to hyperthyroidism.[28] She said that when she worked for Albertson's in 2014 to 2016 she worked part-time about 20 hours a week.[29] She said she bagged groceries, helped customers to their car, and cleaned the store.[30] She said that in 2017 she worked for seven months at a Safeway and it was full-time work as a produce clerk.[31] As a produce clerk, she cut fruit and vegetables in the morning, stocked the shelves, and lifted up to 40 pounds.[32] She

---

[25] *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

[26] AR 37.

[27] AR 44.

[28] AR 44-45.

[29] AR 45.

[30] *Id*.

[31] AR 46.

[32] AR 47.

1    stopped working at Safeway because it was too much responsibility and she was

2    having panic attacks and they would not allow her to be a part-time employee.[33]

3    She tried to serve food and drinks in a dinner theater but had panic attacks and

4    left after only one day.[34] Her last work was helping her grandmother clean her

5    house and sometimes went with her grandmother to an office she cleaned.[35] She

6    started doing the cleaning in February 2021 and last performed it in April 2023.[36]

7    She only worked for one hour a week and made $30 for the hour.[37]

8              Plaintiff testified that in 2018 she was homeless and that she later moved

9    back in with her mother.[38] She lived with her mother for 4 years before she moved

10   to Kennewick in June 2023.[39] She said that she had tried many different

11   antipsychotics and antidepressants and her body could not process them, but that

12   she was able to take mood stabilizers and thyroid medication.[40] She said she was

13   on Lamotrigine and that she was not taking other psychotropic medications

14

15   [33] AR 47-48.

16   [34] AR 48.

17   [35] AR 49.

18   [36] *Id.*

19   [37] AR 50.

20   [38] AR 50-51.

21   [39] AR 51.

22   [40] *Id.*

23

because her doctors wanted to stabilize her thyroid first.[41] Plaintiff stated that

therapy had cured her PTSD and she was working on stabilizing her mood.[42] She

said that she tried to work but did not think she was ready yet.[43] Plaintiff said that

she smokes marijuana about two or three times a day, morning and at night and

during the day if she is anxious and that it slows down her racing thoughts and

helps her focus.[44] She said no provider had ever told her to stop or cut down her use

of marijuana and that between the ages of 18 and 21 before she got medication she

used marijuana to self-medicate.[45]

     Plaintiff testified that she has digestive issues including lactose intolerance,

thyroid issues, and IBS.[46] Plaintiff said that no one ever talked to her about

marijuana use being linked to vomiting syndrome.[47] She said that she did not feel

like marijuana-induced psychosis was an issue for her.[48]

---

[41] AR 52.

[42] *Id.*

[43] AR 53.

[44] *Id.*

[45] AR 53-54.

[46] AR 54.

[47] *Id.*

[48] *Id.*

DISPOSITIVE ORDER - 11

b.    *The vocational expert's testimony*

The following exchange took place on the record:

    EXAMINATION OF VOCATIONAL EXPERT BY REPRESENTATIVE:

    Q  For absenteeism, you told us about eight hours a month.
Would that mean if a person is having a partial absence, such as
leaving early, coming in late, is that going to contribute to those
eight hours?

    A  It would.

    Q  Okay.  And I'd like you to consider a hypothetical
individual, this person is going to have moderate limitations --
which this form defines that as a significant limitation -- in the

ability to perform the specific work tasks, and then those work
tasks are going to be:  their ability to learn new tasks, their
ability to perform routine tasks without special supervision, to
make simple decisions, to ask simple questions and request
assistance --

A    Mr. Jerez, would you please --

Q    Yes?

A    -- go a little slower?  I'm trying to write it down.

Q    All right.  Sorry.

A    Okay.  That's all right.

Q    So I'll go back to the work functions.  So again, these are --

A    Thank you.

Q    Yeah.  These are significant limitations.  So learning new tasks; performing routine tasks without special supervision; making simple workplace decisions; asking simple questions and requesting assistance; and finally, communicating and performing in the work setting.  Could that hypothetical individual sustain competitive employment?

A    If the person had all of those, Mr. Jerez, no.

Q    Okay.  All right.  And I guess, specifically with regard to supervision, if an individual is requiring extra supervision to stay on-task, is that sustainable in competitive employment?

A    Not in the DOT; but based on my training and experience, I don't believe it would be. [49]

### 2.    The ALJ's Findings

The ALJ articulated the following reasoning regarding his consideration of

---

[49] AR 65-66.

both the marked limitations and the mild to moderate limitations to which

Dr. Morgan opined:

> Conversely, I find unpersuasive the opinions by DSHS physician, David T. Morgan, Ph.D., who evaluated the claimant in April 2021 (Exhibit 8F/19-23; duplicate at Exhibit 5F/18-22) and February 2023 (Exhibit 8F/27-31). The marked limitations assessed by Dr. Morgan are out of proportion to the medical evidence as discussed above that reflects only mild to moderate limitations with relatively unremarkable/benign objective signs at his evaluations with the claimant (i.e., appearance, speech, attitude, affect thought process and content, perception, memory, judgment and insight) (See e.g., Exhibits 8F/22-23, 30-31). Dr. Morgan relied on his observations and findings, which is expected of an examining physician. With that said, however, this means his observations and findings were of the claimant's subjective reports and presentation at those evaluations (i.e., what she told him and presented to him on those specific days). Yet, the claimant's self-reports of limitations through the date last insured are not entirely reliable, as discussed in this decision. Specifically, the claimant did not disclose her daily cannabis use to Dr. Morgan (See e.g., Exhibit 8F/20, 28, which state, "Client does not report a history of substance abuse or chemical dependency."). This is a significant omission as the accompanying records diagnosed cannabis dependence (See e.g., Exhibit 8F/4, 35). Dr. Morgan also had very limited record information to review ("DSHS records; mental health records"), and it appears he did not carefully review even the small amount of records he was provided, since there is a diagnosis of cannabis dependence attached to his evaluation as well as other notes in the record indicating the claimant was using cannabis "approximately every 2 hours" and her medical provider had "[s]trongly encouraged reduction in marijuana use" (See e.g., Exhibits 4F/113; 8F/2, 4, 34-35, 16, 47; 10F/7; 11F/5-6, 19, 35, 49, 66, 86, 104, 130, 146, 160, 177-178, 198-199, 213, 229). Using cannabis every 2 hours is an extraordinarily heavy use of a substance, notwithstanding its legality, and the claimant's medical provider found that level of use to be a complicating factor for her irritable bowel syndrome and vomiting (cannabis hyperemesis) (See e.g., Exhibit 3F/12, 15). Dr. Morgan did not discuss or render any cannabis related condition and did not take into account whether daily cannabis use could be a cause of, or impact the claimant's reported mental health symptoms of anxiety and being reluctant to leave her home and seek employment. Accordingly, I find the mild to moderate assessed by Dr. Morgan limitations persuasive but not the marked limitations. This is supported by the other grossly normal

mental status examinations in the record (See e.g., Exhibits 1F/21, 27, 32, 38; 2F/9; 5F/2, 4-6; 8F/2-3, 5- 6, 34-35; 11F/7-9, 20-22, 36-38, 50-52, 67-69, 87-89, 106-107, 132-133, 147-149, 162-163, 179- 180, 200-201, 213-214, 230-231) and is consistent with the medical evidence of record as a whole.[50]

3.    <u>Relevant Medical Records</u>

Because the central issue being considered by the Court is whether the ALJ adequately provided in the RFC for Dr. Morgan's opined mild to moderate limitations, only relevant medical records are summarized here.

On April 23, 2021, David Morgan, PhD, examined Plaintiff at the request of the Washington State Department of Social and Health Services.[51] Dr. Morgan's report gave detailed notes regarding an interview in which he addressed Plaintiff's psychosocial history, medical and mental health history, educational and work history, substance abuse history, and activities of daily living.[52] Dr. Morgan opined that Plaintiff's anxiety was moderate to marked in severity; her depression was moderate in severity; and her borderline personality disorder was moderate to marked in severity.[53] On examination Plaintiff's speech was normal; and she had cooperative behavior, an anxious mood, normal affect; and her thought process and

---

[50] AR 26.

[51] AR 779-783, 898-902.

[52] AR 779-780, 898-899.

[53] AR 780, 899.

content, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment were within normal limits.[54]

Dr. Morgan opined that Plaintiff had a moderate limitation in the following activities: understand, remember, and persist in tasks with detailed instructions; learn new tasks; perform routine tasks without special supervision; be aware of normal hazards; and set realistic goals and plan independently.[55] He opined that Plaintiff would have a marked impairment in the following activities: perform activities within a schedule, maintain regular attendance, and be punctual without special supervision; adapt to changes in a routine work setting; make simple work-related decisions; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychological symptoms.[56]

On November 4, 2021, state agency consultant Jon Anderson, PhD, reviewed Plaintiff's file at the initial level of review.[57] Dr. Anderson opined that Plaintiff has a mild limitation in the ability to understand, remember, and apply information.[58]

_____

[54] AR 782-783, 901-902.

[55] AR 781, 900.

[56] *Id.*

[57] AR 75-78, 85-89.

[58] AR 75, 86.

He opined that Plaintiff had a moderate limitation in the following broad functional areas: interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.[59] Dr. Anderson stated the following regarding Plaintiff's adaptive limitations:

> [Plaintiff] will have occasional difficulties with adapting to change, but will be able to adapt to normal, routine changes in a competitive workplace within normal tolerances. Furthermore, [Plaintiff] will be able to respond appropriately to normal hazards and travel in unfamiliar places using public transportation or other modes of travel in a competitive work environment. [Plaintiff] will not be able to set goals independently on a consistent basis but will be able to understand and follow employer set goals. Per third party ADLs [Plaintiff] is very codependent upon others. [Plaintiff] verifies that she is unable to go out by herself and needs encouragement to complete ADLs.[60]

On July 23, 2022, state agency consultant Sheri Tomak, PsyD, reviewed Plaintiff's file at the reconsideration level of appeal.[61] She opined that for the Title 2 portion of the claim there was insufficient evidence to make a determination regarding Plaintiff's functioning.[62] Dr. Tomak opined that as to the Title 16 portion of the claim, Plaintiff had a mild limitation in the ability to understand, remember, and apply information.[63] She opined that Plaintiff had a moderate limitation in the

---

[59] Id.

[60] AR 78, 89.

[61] AR 98-100, 110-112.

[62] AR 99-100.

[63] AR 111.

following broad functional areas: interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.[64]

    4.  <u>Analysis</u>

The Court finds the ALJ failed to adequately explain his reasoning for not including a provision regarding Dr. Morgan's accepted opined limitation that Plaintiff had a moderate/significant limitation in the ability to perform routine tasks without special supervision.

Dr. Morgan opined that Plaintiff had a moderate limitation in the following activities: understand, remember, and persist in tasks with detailed instructions; learn new tasks; perform routine tasks without special supervision; be aware of normal hazards; and set realistic goals and plan independently.[65] The ALJ accepted those opinions as persuasive.[66]  In his brief, the Commissioner focused his argument with regard to Dr. Morgan's opinions mainly on defending the ALJ's consideration of Dr. Morgan's opined marked limitations.[67] Additionally, the Commissioner asserted that Dr. Morgan seemed unaware of Plaintiff's heavy use of cannabis when formulating his opinions.[68]

---

[64] Id.

[65] AR 781, 900.

[66] AR 26.

[67] ECF No. 12.

[68] *Id*.

1    The ALJ included the following non-exertional limitations in his formulated

2    RFC: ". . . able to understand, remember and carry out simple work; with standard

3    work breaks provided; occasional, superficial interaction with the public, coworkers

4    and supervisors; able to accept simple instructions from supervisors; able to use

5    judgement to make simple work decisions; occasional, normal, and routine

6    workplace changes."[69] The ALJ's formulated RFC adequately limits Plaintiff

7    understanding, remembering, and carrying out simple work.  The Court finds that

8    this limitation sufficiently addresses Dr. Morgan's opined moderate limitation to

9    understanding, remembering, and carrying out detailed work and learning new

10   tasks.  On its face, however, that portion of the language in the RFC is inconsistent

11   with a limitation that Plaintiff had a moderate impairment in performing routine

12   (simple) work without extra supervision.

13   The Court notes that the ALJ also found the opinions of state agency

14   evaluators Dr. Anderson and Dr. Tomak persuasive,[70] and Dr. Anderson stated

15   that Plaintiff was codependent and would not be able to set goals independently

16   and would only be able to follow employer set goals.[71]

17   "Where an ALJ accords substantial or great weight to a physician's opinion,

18   he must either incorporate their findings into the RFC or offer an explanation for

19

20   [69] AR 21.

21   [70] AR 25-26.

22   [71] AR 78, 89.

23

DISPOSITIVE ORDER - 19

1   why he chose not to accept them."[72]   Once an ALJ has found a medical opinion

2   noting moderate limitations to be persuasive, the ALJ is under an obligation to

3   account for the moderate limitations or explain why he did not include them,

4   irrespective of the broader reasoning given in support of a formulated RFC.[73]   "This

5   does not necessarily mean that the ALJ was required to explicitly transcribe the

6   limitation in the RFC. Rather, he is required to account for it in his 'translation.'[74]

7       The ALJ's formulated RFC fails to account for a need for additional

8   supervision to carry out simple or routine tasks and fails to account for Plaintiff's

9   moderate limitation in setting goals independently.   Moreover, the VE testified

10  that with regard to the need for additional supervision to carry out routine tasks,

11  this specific limitation when considered individually and not in combination with

12  the other opined limitations, would preclude work.[75] For that reason, the Court

13  concludes that the ALJ's formulated RFC fails to adequately account for

14  Dr. Morgan's opined limitations.

15

16  _____

17  [72] *Martin v. Comm'r of Social Security Administration*, 472 F. App'x 580 (9th Cir.

18  2012).

19  [73] *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013).

20  [74] *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006

21  (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical

22  findings into a succinct RFC.").

23  [75] AR 66.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    5.    <u>Summary</u>

       Because the ALJ did not adequately explain his reason for failing to account for all of Dr. Morgan's opined moderate limitations, specifically the need for additional supervision to complete simple, routine tasks, a remand is warranted.

## B.    Remand for Further Proceedings

       Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[76] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[77]

       Here, the ALJ also found persuasive the opinions of state agency evaluators Dr. Anderson and Dr. Tomak.[78] There is a significant discrepancy in the opinions when compared to Dr. Morgan's opinion because both Dr. Anderson and Dr. Tomak opined that at least with regard to the Title 16 portion of Plaintiff's claim, she had

---

[76] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[77] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[78] AR 25-26.

the capacity to carry out simple instructions without special supervision.[79] For that reason, the Court declines to credit Dr. Morgan's opined limitation and instead remands the case for a more thorough analysis of the medical opinions as a whole.

**C.    Medical Opinions: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly evaluate the medical opinions of Dr. Morgan and Dr. Petaja. As discussed above, the ALJ failed when formulating the RFC. Because the Court has remanded the case for consideration of the medical opinions as a whole, the Court finds this issue is moot.

**D.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly evaluate her testimony. As discussed above, because the Court has remanded the case for consideration of the record as a whole, the Court finds this issue is moot.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. On remand, the ALJ is to reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[79] AR 75, 86, 111.

1    2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and**

2    **12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

3    IT IS SO ORDERED. The Clerk's Office is directed to file this order and

4  provide copies to all counsel.

5    DATED this 26th day of February, 2025.

6    _Edward F. Shea_

7    _____
     EDWARD F. SHEA
     Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DISPOSITIVE ORDER - 23